IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MARY ARNETTA BARRENTINE                                                    PLAINTIFF

V.                                                            CAUSE NO.: 1:11CV072-SA-DAS

RIVER PLACE NURSING CENTER, LLC                                        DEFENDANT

MEMORANDUM OPINION

Plaintiff filed this action alleging she was terminated from her position as a Charge Nurse

at River Place Nursing Center in violation of Title VII, 42 U.S.C. § 1981, the Age

Discrimination in Employment Act, as well as Mississippi public policy.  Defendant filed a

Motion for Summary Judgment [42], and the Court, after reviewing the motion, responses, rules

and authorities, GRANTS that motion IN PART, and DENIES the motion IN PART.

*Factual and Procedural Background*

Plaintiff Mary Barrentine was hired as a Charge Nurse at the skilled nursing facility,

River Place, on September 16, 2009.  In her position as a Charge Nurse, Barrentine was

responsible for administering medications, assessing patients, calling doctors, caring for patients,

and supervising other nurses and certified nursing assistants (CNA).

On May 2, 2010, Barrentine witnessed a CNA under her supervision allegedly abusing a

female resident.  Plaintiff claims she saw Nathan Wilbanks grab the arm of a female resident and

demand, in a "harsh fashion," that she "pick up a cup" which the elderly resident had apparently

dropped.  Once the CNA released the resident, Barrentine finished tube feeding a patient she was

tending to before calling the Director of Nursing (DON) Deanna Roberson to report the alleged

abuse.  Roberson told Barrentine to send the CNA home immediately.  Wilbanks was located in

the nursing facility, and Barrentine told him to leave. Barrentine never saw the CNA leave the facility, and is not sure what time he actually exited the premises.

Barrentine was off that weekend, and prior to her shift on Monday, drafted a narrative of the events she witnessed and turned them into Administrator of River Place and the DON. On that same day, she was interviewed by the DON and Administrator and recreated the event at the site of the alleged abuse. She was then suspended from work. On May 14, 2010, Barrentine received a letter that she was terminated from the employment of River Place for not properly responding to what she perceived to be resident abuse by sending the CNA home immediately and escorting him from the facility and not compiling other eye witness statements to the alleged abuse.

Barrentine filed a claim with the EEOC, and now brings this lawsuit alleging that she was discharged due to her race and age, and in violation of Mississippi public policy for reporting alleged patient abuse. River Place seeks summary judgment on Plaintiff's discrimination claims, and seeks dismissal for failure to state a claim upon which relief can be granted on her McArn claim.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Discussion and Analysis*

1.  Race Discrimination

Barrentine claims she was the victim of racial discrimination. The complainant in a Title VII lawsuit must carry the initial burden of establishing a prima facie case of racial discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In order to establish a prima facie case of racial discrimination, the plaintiff must establish that she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected

class or other similarly-situated employees were treated more favorably. <u>Bryan v. McKinsey & Co., Inc.</u>, 375 F.3d 358, 360 (5th Cir. 2004).

If the plaintiff establishes a prima facie case, "a rebuttable presumption of intentional discrimination attaches and the burden of production shifts to [the defendant] to provide a legitimate, non-discriminatory reason for its adverse employment action." <u>Hervey v. Mississippi Dep't of Education</u>, 404 F. App'x 865, 868 (5th Cir. 2010) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802-03, 93 S. Ct. 1817). The burden of persuasion always remains with the plaintiff. <u>Id.</u> Once the defendant produces evidence of a legitimate, non-discriminatory reason for its behavior, the presumption of discrimination is rebutted and the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretextual and a reasonable jury could nonetheless infer that the employer's reason for discharging the plaintiff was discriminatory. <u>Id.</u>

        a.   *Prima Facie Case*

Defendant does not dispute that Barrentine is a member of a protected class, suffered an adverse employment action, and was replaced by someone outside of her protected class. However, Defendant contends that Barrentine was not qualified for her position as Charge Nurse because she received prior disciplinary actions for sub-standard patient care and was ultimately terminated for unsatisfactory job performance.

Defendant attached the Charge Nurse Description used for employment purposes. That document outlines the "Requirements" necessary to fill the position of Charge Nurse. Included in those "Requirements" are licensing and certification requirements, experience and educational requirements, physical requirements, and cognitive and sensory requirements. Defendant does not contend that at hire Barrentine failed to fulfill those requirements. Thus, the Court finds that

Plaintiff was qualified for the position she held. Accordingly, Plaintiff has met her prima facie burden of race discrimination.

### b. Legitimate Non-Discriminatory Reason for Discharge

Defendant cites Plaintiff's improper handling of an allegation of abuse and failing to cooperate in the subsequent investigation as the reasons for her discharge. As noted above, Defendant contends that Plaintiff should have immediately escorted the alleged abuser off the campus of River Place once she witnessed the alleged abuse and interviewed potential eye witnesses for River Place's internal investigation. Moreover, Barrentine refused to give a statement to Kathy Peacock, a corporate nurse sent to oversee the internal investigation and allegation of abuse. Barrentine admits that she did not immediately escort the alleged offending CNA off the premises upon witnessing the alleged abuse. She did not conduct eye witness interviews or gather statements from other persons at work during the relevant time period. She further acknowledges that she did not cooperate with the corporate inquiry into the alleged abuse. Thus, Defendant has met its burden in setting forth a legitimate non-discriminatory reason for Plaintiff's termination.

### c. Pretext

Regardless of whether Plaintiff surpassed her prima facie burden, however, Barrentine has put forth no evidence to establish that River Place's reason for her termination was pretextual. Plaintiff contends that Defendant's proffered reasons for her termination are false. In particular, she claims she was never told to immediately escort the alleged abuser off the property, nor was she told to collect statements from co-workers about the incident. She contends she was only told that if such incident occurred, she was to notify the DON or the

administrator, which she did. Thus, Plaintiff contends Defendant's reasons for her termination are unworthy of credence, and that a jury could infer discrimination on that basis alone.

Plaintiff also notes that she was the only black RN working at the facility during the relevant time period, and that she was an "awesome" nurse. Her main complaints concern her treatment at River Place versus the treatment of the alleged abuser, a white male CNA. As evidence of pretext, she alleges that while River Place contested her claim to unemployment benefits, it did not contest the alleged abuser's entitlement to unemployment benefits. Moreover, Barrentine contends that the alleged abuser was allowed to return to work for at least a few days before being terminated. She further notes that Carrie Sintikakis, a white LPN, reported the alleged abuser in this case for another alleged instance of abuse, and was warned by the River Place administration that she would be terminated before the alleged abuser would be terminated. Moreover, Plaintiff also identifies Tammy Allen, another white LPN who reported the same CNA for alleged abuse and was warned similarly to Sintikakis. This evidence does not prove that Defendant's reasons for her termination were pretextual, despite the Plaintiff's belief, however. If anything, it highlights favoritism of the alleged abuser over Plaintiff and her white counterparts.

Plaintiff's claim of pretext appears to be simply a subjective belief of racial discrimination without a factual basis. The jurisprudence in this area loudly proclaims that such subjective beliefs are insufficient to maintain a claim under Title VII. Kennerson v. Guidry, 135 F. App'x 639, 641 (5th Cir. 2005) (stating that in "a Title VII employment discrimination or retaliation case, plaintiff's subjective belief [is] an insufficient defense to a summary judgment motion."); Moore v. McCullough, 351 F. Supp 2d 536, 541 (N.D. Miss. 2005) (granting summary judgment for the employer when the only evidence offered by the employee to suggest

the employer's legitimate, non-discriminatory reason for terminating him was pretextual was the employee's own subjective belief). The Court finds that Plaintiff has failed to meet the burden required to surpass the summary judgment stage.

    2.  <u>Age Discrimination</u>

Under the ADEA, it is "unlawful for an employer ... to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). A plaintiff bringing an ADEA claim "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, PPC, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). "[F]or an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." <u>Moss v. BMC Software, Inc.</u>, 610 F.3d 917, 929 (5th Cir. 2010) (citing <u>EEOC v. Tex. Instruments, Inc.</u>, 100 F.3d 1173, 1181 (5th Cir. 1996) (internal quotation marks omitted)); <u>see</u> <u>also</u> <u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893, 897 (5th Cir. 2002) (citing <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1217 (5th Cir. 1995)). Because Plaintiff offers no direct evidence of age discrimination, the McDonnell Douglas framework applies. "To demonstrate [a prima facie case of] age discrimination a 'plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge [i.e., at least 40 years old]; and (4) he was either i) replaced by someone outside the protected class [i.e., under the age of 40], ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 309 (5th Cir. 2004) (quoting <u>Palasota v. Haggar Clothing Co.</u>, 342 F.3d

569, 576 (5th Cir. 2003) (internal quotation marks and citation omitted)). "The first three elements of a prima facie case of age discrimination under the ADEA are identical to the first three elements of a Title VII prima facie case." Meinecke v. H & R Block of Houston, 66 F.3d 77, 83 (5th Cir. 1995) (internal citation omitted).

If the plaintiff establishes a prima facie case of age discrimination, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation to show that the reason given is merely pretextual." Moss, 610 F.3d at 922 (internal citations and quotation marks omitted). A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010) (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)). The plaintiff must prove that "discriminatory animus was the 'determinative basis for his termination.'" Machinchick v. PB Power, Inc., 398 F.3d 345, 351 (5th Cir. 2005) (quoting Rachid, 376 F.3d at 310). "As a practical matter, this requirement dictates that the plaintiff put forward evidence rebutting each one of a defendant's non[-]discriminatory explanations for the employment decision at issue." Id. at 351 (internal footnotes and citations omitted).

### a. Prima Facie Case

It is undisputed that Plaintiff was discharged and within the protected class, as she was fifty-seven years of age at the time of discharge. However, Defendant notes that Barrentine was also fifty-seven years of age when she was hired. The Fifth Circuit has noted that where the "hirer and firer" are the same individual and the termination of employment occurs within a

relatively short time span following the hiring, such evidence is relevant in determining whether discrimination occurred. See Haud v. Ideal Indus., 81 F.3d 541, 546 (5th Cir. 1996). Thus, while the "same actor inference" is not dispositive of whether there was discrimination, the court must acknowledge that fact when deciding the ultimate issue: whether plaintiff presented a genuine issue of material fact that age was the determinative factor in the employment decision. Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993).

Deanna Roberson was DON at River Place and hired Plaintiff in September of 2009. Defendant claims now that Melinda Calloway and Kathy Peacock, corporate personnel, were responsible for the decision to terminate Barrentine; however, in the EEOC investigation, River Place listed Sherry Law, the administrator, as the ultimate decision maker. Indeed, Defendant acknowledges that the DON was only one of many who participated in the decision to terminate Plaintiff. Accordingly, the "same actor inference," where the hiring person was only a participant in the decision to terminate Plaintiff, is not dispositive of River Place's lack of intent to discriminate.

Defendant also asserts that Plaintiff cannot meet her prima facie burden because the person replacing her was also within the protected class under the ADEA. Indeed, Michael Egger was forty years old when chosen to replace Plaintiff, and the ADEA specifically protects those "individuals at least forty years of age." 29 U.S.C. § 631(a). However, the Supreme Court has noted that "[t]he fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age*." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996). Thus, because the Fifth Circuit has recognized that as part of the prima facie analysis, a plaintiff that can show he was "replaced by someone younger" satisfies that burden as long as there is

ultimately no dispute of fact that he was "discharged because of his age." See Rachid, 376 F.3d at 309; Palasota, 342 F.3d at 576. Because Plaintiff was indisputably replaced by someone younger, she has met her prima facie burden.

### b. Legitimate, Nondiscriminatory Reason

As noted above, Defendant has produced a legitimate, non-discriminatory reason for Plaintiff's discharge.

### c. Pretext

The Court finds that Plaintiff has not presented substantial evidence of pretext to sustain her case past summary judgment. Plaintiff fails to point to specific evidence showing that the reason behind Defendant's decision was age discrimination. For example, Plaintiff sets forth no specific evidence of direct or indirect remarks or expressive conduct concerning Plaintiff's age by any of the decisionmakers. She presents no pattern or practice of age-based discrimination at River Place. Instead, she describes an unfair work environment in which superiors play favorites, and does not present sufficient evidence that any perceived unfair treatment is age-related. Plaintiff has presented evidence to the Court that points toward finding Barrentine's termination was motivated by favoritism, but not illegal age discrimination. "The ADEA was not intended to be a vehicle for judicial second guessing of employment decisions, nor was it intended to transform the courts into personnel managers." Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988) (citations omitted). For these reasons, Plaintiff's age discrimination claim must be dismissed on its merits, as there are no genuine disputes of material fact with respect to this claim.

3.   Discharge in Violation of Mississippi Public Policy

Defendant seeks dismissal of Plaintiff's McArn claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant claims that Plaintiff's Complaint fails to allege facts which give rise to potential criminal penalties.  In particular, Defendant asserts that Plaintiff failed to meet the minimum pleading requirements in pleading "abuse" by the CNA.  Defendant insists that to state a valid claim, Plaintiff would have had to state the manner in which the order to "pick up the cup" was given, i.e., the tone, volume, proximity to the resident.

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."  Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  Of course, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible.  Lone Star Fund, 594 F.3d at 387 (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

The Mississippi Vulnerable Persons Act was codified to provide "protective services for vulnerable persons in Mississippi who are abused, neglected or exploited."  Miss. Code Ann. § 43-47-3.  That statute mandates criminal penalties for persons who abuse, neglect or exploit any vulnerable person.  Id. at § 43-47-19.  "Abuse" is defined by the statute as

> the commission of a willful act, or the willful omission of the performance of
> a duty, which act or omission contributes, tends to contribute to, or results in
> the infliction of physical pain, injury or mental anguish on or to a vulnerable
> person, the unreasonable confinement of a vulnerable person, or the willful
> deprivation by a caretaker of services which are necessary to maintain the
> mental or physical health of a vulnerable person.

Plaintiff's Complaint identifies the alleged abuse as an incident occurring on May 2, 2010, and is described as the following:

> On that date, Plaintiff heard a young white male nurse's assistant abusing an elderly resident by ordering the resident, in a harsh fashion, to "pick up a cup" which the elderly resident had apparently dropped. Plaintiff became concerned that the conduct of the young white nurse's assistant constituted abuse of an elderly person and reported the incident to management.

Based on the definition cited above of the term "abuse" as defined in the Vulnerable Persons Act, the Plaintiff has stated a legally cognizable claim that she witnessed potential abuse of a criminal nature and was terminated for reporting such. Based solely on the "harsh" words spoken as alleged in the Complaint, a reasonable jury could find that the CNA "abused" the resident. As such, Defendant's motion to dismiss the public policy violation claim is DENIED.

*Conclusion*

Plaintiff has failed to demonstrate a genuine dispute of material fact that she was terminated in violation of Title VII or Section 1981. Her claim that she was terminated in violation of Mississippi public policy, however, survives the Federal Rule of Civil Procedure 12(b)(6) inquiry. Therefore, Defendant's Motion for Summary Judgment [42] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this the 7th day of February, 2013.

**  /s/ Sharion Aycock          **
**U.S. DISTRICT JUDGE**